# EXHIBIT A

Sameer Rastogi, Esq. (SR-5249)
Christopher P. Milazzo, Esq. (CM-9974)
SICHENZIA ROSS FRIEDMAN FERENCE LLP
61 Broadway, 32nd Floor
New York, New York 10006
(212) 930-9700 (tel.)
(212) 930-9725 (fax)

Attorneys for Plaintiff
Charter Capital Resources, Inc.



JUDGE SCHEINDLIN

UNITED STATES DIRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

CHARTER CAPITAL RESOURCES, INC.,

                                  Plaintiff,

        -against-

TRIO INDUSTRIES GROUP, INC.

                             Defendant.

-----------------------------------------------------------------x

Civ. No. 07 CV 3354

**COMPLAINT**

Plaintiff Charter Capital Resources, Inc. ("Plaintiff" or "CCR"), by its attorneys,

Sichenzia Ross Friedman Ference LLP, alleges for its Complaint in the above-captioned action

as follows:

<u>**Introduction**</u>

1.      This is a simple action to enforce an unconditional promissory note, dated August

22, 2005 (the "Note"), executed by Defendant Trio Industries Group, Inc. ("Defendant" or

"Trio") in favor of Plaintiff. Defendant has failed to pay any of the $100,000 in principal due

under the Note. Defendant has also failed to pay the financing fee and late fees due pursuant to

the terms of the Note. Accordingly, Plaintiff is entitled to a judgment for all amounts due and

owing under the Note and is entitled to a declaration that it has the right to sell shares of

Defendant pledged as collateral so that it may recoup the amounts due and owing Plaintiff thereunder.

### The Parties

2.      Plaintiff is a corporation organized and existing pursuant to the laws of the State of Delaware with its principal place of business located at 515 Madison Avenue, New York, New York.

3.      Upon information and belief, Defendant is a corporation organized and existing pursuant to the laws of the State of Florida with its principal place of business located at 6750 Hillcrest Plaza Drive, Dallas, Texas.

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 is it is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of costs and interest.

5.      This Court has personal jurisdiction over Defendant pursuant to Section 15(D) of the Note, which provides, in pertinent part, as follows:

> The parties hereby consent to and irrevocably submit to the personal jurisdiction over each of them by the Courts of the State of New York in any action or proceeding . . .

6.      Thus, Defendant consented to the jurisdiction in this Court.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial portion of the events giving rise to the above-captioned action occurred in this District, to wit, the Note was negotiated in this District, payment was made from this District and payment was to be made to Plaintiff in this District.

## Background

8.      Upon information and belief, Trio is in the business of manufacturing doors, countertops, vanities and other parts for sellers of cabinetry.  Trio is a publicly traded company that is traded on the Pink Sheets.

9.      Upon information and belief, Trio was in need of cash for the operation of its business.  In or about August 2005, Trio approached CCR and requested a short term loan, which loan CCR agreed to provide.

10.     On or about August 22, 2005, CCR loaned Trio $100,000.

11.     In exchange for the loan, Trio executed the Note in favor of CCR, which required Trio to repay the principal amount of $100,000, together with a financing fee in the amount of $8,000.  The principal and financing fee under the Note, amounting to $108,000, was due and payable to CCR on October 2, 2005 (the "Maturity Date").  A true and correct copy of the Note is annexed hereto as Exhibit A.

12.     Pursuant to Section 4 of the Note, as security for the complete payment and performance of Trio's obligations under the Note,  Trio placed thirty million (30,000,000) shares of Trio common stock (the "Collateral"), issued in the name of Beryl Zyskind, in escrow with Mintz & Fraade, PC pursuant to a written escrow agreement, dated August 24, 2005 (the "Escrow Agreement").  A true and correct copy of the Escrow Agreement is annexed hereto as Exhibit B.

### As And For A First Cause Of Action
### (Breach of Promissory Note-Failure to Pay Principal and Financing Fee)

12.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the above paragraphs, as if fully set forth herein.

13.  As set forth above, pursuant to the terms of the Note, Trio was required to pay $108,000, representing the principal and financing fee, to CCR on October 2, 005.

14.  Trio failed to pay any portion of the $108,000 due and owing CCR on October 2, 2005.

15.  Trio's failure to pay the principal and financing fee due pursuant to the Note on October 2, 2005, and its continued failure to make such payment within five (5) days of October 2, 2005, i.e., October 7, 2005, constituted an Event of Default under the Note.

16.  Pursuant to Section 8 of the Note:

Events of Default

The term "Event of Default" as used herein shall mean the occurrence if any one or more of the following events:

(A) The failure of the Payor [Trio] to make payment of Principal and Financing Fee on or prior to the Maturity Date and the five (5) day grace period;

* * *

17.  Although not required by the terms of the Note, CCR has duly demanded the payment of the principal and financing fee due pursuant to the Note

18.  Despite numerous demands by CCR, Trio has failed to pay any part of the $108,000 principal and financing fee due and payable CCR under the Note.

19.  CCR has performed all of its obligation under the Note.

20.  As a result of the foregoing, Trio has breached the Note and is in default of its obligations under the Note by its failure to pay the principal and interest due thereunder on the Maturity Date or within the five day grace period.

21.  Plaintiff has been damaged in the amount of $108,000 as a result of Defendant's breach of its obligations to pay the principal and financing fee due under the Note.

- 4 -

<u>**As And For A Second Cause of Action**</u>
**(Cash-Late Fees Pursuant to Promissory Note)**

22.   Plaintiff repeats, realleges, and incorporates by reference each and every

allegation contained in the above paragraphs, as if fully set forth herein.

23.   Pursuant to Section 2(C) of the Note:

> If full payment of the principal and financing fee due pursuant to
> this Note is made more than five (5) business days after the
> Maturity Date, then the Payor [Trio] shall pay to the Payee [CCR]
> the sum of one thousand ($1,000) dollars . . . until full payment of
> principal, the financing fee, and all penalty amounts is made.

24.   As a result of Trio's failure to pay the principal and financing fee due under the

Note by October 7, 2005, late fees in the amount of $1,000 per day (the "Late Fees") began

accruing on October 8, 2005.

25.   As of the date of this Complaint, Late Fees in the amount of $529,000 have

accrued pursuant to Section 2(C) of the Note.  Trio has only paid CCR the sum of $12,000

against the accrued Late Fees.  Accordingly, as of the date of this Complaint, the sum of

$541,000 is due and owing CCR from Trio as Late Fees pursuant to Section 2(C) of the Note.

The Late Fees continue to accrue at the rate of $1,000 per day.

26.   Although not required under the terms of the Note, CCR has demanded the

payment of Late Fees due and owing CCR under the Note.

27.   Despite numerous demands for the payment of Late Fees, Trio has failed to pay

same to CCR.

28.   As a result of the foregoing, CCR has been damaged in an amount not less than

$541,000 as of the date of the Complaint, and late fees continue to accrue at the rate of $1,000

per day.

### As And For A Third Cause Of Action
#### (Stock-Late Fees Pursuant to Promissory Note)

29.    Plaintiff repeats, realleges, and incorporates by reference each and every

allegation contained in the above paragraphs, as if fully set forth herein.

30.    Pursuant to Section 2(C) of the Note:

> If full payment of the principal and financing fee due pursuant to
> this Note is made more than five (5) business days after the
> Maturity Date, then the Payor [Trio] shall . . . issue to the Payee
> [CCR] twenty-five hundred (*sic*) (25,000) shares of [Trio's]
> common stock for each day thereafter until full payment of
> principal, the financing fee, and all penalty amounts is made.

31.    As a result of Trio's failure to pay the principal and financing fee due under the

Note by October 7, 2005, beginning October 8, 2005, Trio was required to issue to CCR 25,000

shares of Trio's common stock for each day the all amounts due under the Note were paid.

32.    Pursuant to Section 2(C) of the Note, CCR is presently entitled to have

13,825,000 shares of Trio common stock issued to it, and is entitled to have an additional 25,000

shares issued to it for each day the principal and Late Fees remain unpaid.

33.    Although not required under the terms of the Note, CCR has demanded that Trio

issue the shares to which it is entitled pursuant to Section 2(C) of the Note.

34.    Despite numerous demands for same, Trio has failed issue the shares due and

owing CCR pursuant to Section 2(C) of the Note.

35.    Accordingly, CCR is also entitled to an order and judgment of the Court directing

Trio to issue 13,825,000 shares of Trio common stock to CCR and an additional 25,000 shares

for each day the principal and Late Fees remain unpaid after the filing of this Complaint.

## As And For A Fourth Cause of Action
### (Attorneys' Fees Pursuant to Promissory Note)

36.    Plaintiff repeats, realleges, and incorporates by reference each and every

allegation contained in the above paragraphs, as if fully set forth herein.

37.    Pursuant to Section 13 of the Note:

Collection Costs

[Trio] agrees to pay all reasonable costs of collection, including
attorney's fees and costs, which may be paid or incurred by [CCR]
in connection with [CCR's] exercise of its rights or remedies under
this Note.

38.    Trio has defaulted in its obligations under the Note by failing to pay sums due and

owing CCR thereunder and by failing to issue the shares of common stock to CCR pursuant to

Section 2(C) of the Note.

39.    CCR has, and will continue to, incur attorneys' fees in connection with the

collection of the sums due and owing under the Note and the prosecution of this action to enforce

the Note.

40.    Pursuant to Section 13 of the Note, Trio is obligated to pay all costs of collection,

including attorneys' fees incurred by CCR in connection with the enforcement of the Note.

41.    As a result of the foregoing, Plaintiff has been damaged in an amount to be

determined at trial.

## As And For A Fifth Cause Of Action
### (Unjust Enrichment)

42.    Plaintiff repeats, realleges, and incorporates by reference each and every

allegation contained in the above paragraphs, as if fully set forth herein.

43.    Plaintiff loaned Defendant the sum of $100,000 in August 2005.

44.     Upon information and belief, Defendant used such monies for its own benefit in the course of its business.

45.     Defendant has failed to repay any of the $100,000 loaned to Defendant by Plaintiff.

46.     As a result, Defendant has been unjustly enriched by its receipt of the $100,000 from Plaintiff.

47.     Accordingly, Plaintiff is entitled to a judgment against Defendant in the amount of $100,000, together with interest thereon from August 22, 2005.

## As And For A Sixth Cause Of Action
### (Declaratory Judgment)

48.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the above paragraphs, as if fully set forth herein.

49.     As set forth above, Trio defaulted in its obligations to pay sums and issue stock due and owing CCR pursuant to the Note.

50.     Pursuant to Section 4 of the Note, Plaintiff was granted a security interest in the Collateral. Section 4 of the Note provides, in pertinent part, as follows:

> To secure the prompt and complete payment, performance and observance of this Note, simultaneously with the execution of this Note, [Trio] shall place in escrow with Mintz & Fraade, P.C., an aggregate of thirty million (30,000,000) shares of [Trio] . . . which are to be issued in the name of Beryl Zyskind. . . .

51.     Pursuant to paragraph 1(A) of the Escrow Agreement:

> Upon receiving written notice, which is in such form which is satisfactory to the Escrow Agent, from [CCR] with respect to the failure of [Trio] to pay the sum of one hundred and eight thousand ($108,000) dollars to [CCR] on or prior to [October 2, 2005] Maturity Date of the Note, the Escrow Agent shall deliver the [Collateral] as directed in writing by [CCR]; provided, however, that the Escrow Agent shall not release the Collateral if the Escrow

> Agent receives written notice from [Trio] objecting to such
> delivery being made within ten (10) days after receipt of written
> notice from [CCR].

52.     As a result of Defendant's default under its obligations under the Note, CCR sent

written notice to the Escrow Agent, Mintz & Fraade, PC, pursuant to paragraph 1(A) of the

Escrow Agreement on December 14, 2005.

53.     Upon information and belief, on or about December 14, 2005, Mintz & Fraud,

PC, in accordance with paragraph 1(A) of the Escrow Agreement, sent notice to Trio that CCR

had demanded the delivery of the Collateral.

54.     Trio failed to object to the delivery of the Collateral within ten (10) days of the

notice sent to Trio as required by paragraph 1(A) of the Escrow Agreement.

55.     Consequently, the Escrow Agent delivered the Collateral to CCR on or about

December 28, 2005.

56.     By letter, dated January 10, 2006, Plaintiff advised Defendant of its intent to sell

the Collateral in a private sale, some time after January 25, 2006, pursuant to the Uniform

Commercial Code.

57.     Defendant then objected to such sale and filed an action in the District Court of

Dallas County, Texas, in which Defendant sought, among other things, to permanently enjoin the

sale of the Collateral. Defendant also obtained an ex parte temporary restraining order on

January 20, 2006 enjoining the sale. Defendant later withdrew its meritless action, without

prejudice.

58.     Upon information and belief, Defendant maintains its objection to Plaintiff's

possession of the Collateral and its sale.

- 9 -

59.     Based upon the foregoing, there is a real and justiciable controversy regarding Plaintiff's entitlement to sell the Collateral.

60.     Plaintiff has no adequate remedy at law.

61.     Accordingly, Plaintiff is entitled to a judgment declaring that Plaintiff has the right to the possession of the Collateral and the right to sell the Collateral at public or private sale in accordance with the Uniform Commercial Code to recover all sums due and owing under the Note.

WHEREFORE, Plaintiff demands judgment as follows:

(a)     In favor of Plaintiff and against Defendant, on the First Cause of Action, in the amount of $108,000;

(b)     In favor of Plaintiff and against Defendant, on the Second Cause of Action, in the amount of $541,000 as of the date of the Complaint, and accruing at the rate of $1,000 per day to the date of judgment;

(c)     In favor of Plaintiff and against Defendant, on the Third Cause of Action, directing Defendant to issue Plaintiff the number of shares of Trio common stock to be determined by this Court which shall equal the product of the number of days from October 8, 2005 to the date of entry of judgment multiplied by 25,000;

(d)     In favor of Plaintiff and against Defendant, on the Fourth Cause of Action in an amount to be determined at trial;

(e)     On the Fifth Cause of Action, in favor of Plaintiff and against Defendant in the amount of $100,000, together with interest thereon from August 22, 2005;

(f)     On the Sixth Cause of Action, a judgment declaring that Plaintiff has the right to the possession of the Collateral and the right to sell the Collateral at public or private sale in

accordance with the Uniform Commercial Code to recover all sums due and owing Plaintiff

under the Note.

      (g)     For its costs and disbursements in this action, including its reasonable attorneys'

fees; and

      (h)     For such other and further relief as the Court deems just, equitable and proper.

Dated: New York, New York
       April 19, 2007

                  Respectfully submitted,

                  SICHENZIA ROSS FRIEDMAN FERENCE LLP

                  By: _Christopher P. Milazzo_____
                      Sameer Rastogi, Esq. (SR-5249)
                      Christopher P. Milazzo, Esq. (CM-9974)
                  61 Broadway, 32nd Floor
                  New York, New York 10006
                  (212) 930-9700 (tel.)
                  (212) 930-9725 (fax)

                  Attorneys for Plaintiff Charter Capital Resources, Inc.

EXHIBIT A

# PROMISSORY NOTE

$100,000

August 22, 2005

FOR VALUE RECEIVED, Trio Industries Group, Inc., a Texas corporation with an address at 6750 Hillcrest Plaza Drive, Dallas, TX (the "Payor"), agrees to pay to the order of Charter Capital Resources Inc., with an address at 150 East 58th Street, Suite 7A, New York, NY 10022 (the "Payee"), on the Maturity Date set forth in Article "1" of this Promissory Note (the "Note"), unless earlier accelerated in accordance with the terms of this Note, the principal sum of one hundred thousand ($100,000) dollars, with the financing fee set forth in Article "2" of this Note.

1. <u>Maturity</u>

*October 2, 2005*

Payment of the principal balance of this Note shall be due and payable in full on ~~September~~ ~~2~~, 2005 (the "Maturity Date") unless earlier accelerated in accordance with the terms of this Note.

2. <u>Financing Fees/Penalties</u>

(A)    The Payor agrees to pay to the Payee on the Maturity Date a financing fee of eight thousand ($8,000) dollars.

(B)    After the Maturity Date, there will be a five (5) day grace period wherein the Payor shall have the opportunity to cure any default by paying a two thousand ($2,000) dollar penalty to the Payee, increasing the total repayment obligation to a sum of one hundred and ten thousand ($110,000) dollars.

(C)    If full payment of the principal and financing fee due pursuant to this Note is made more than five (5) business days after the Maturity Date, then the Payor shall pay to the Payee the sum of one thousand ($1,000) dollars and issue to the Payee twenty-five hundred (25,000) shares of Payor's common stock for each day thereafter until full payment of principal, the financing fee, and all penalty amounts is made.

3. <u>Issuance of Shares</u>

(A)    As consideration for making the loan which is the subject of this Note, the Payee shall receive from the Payor two hundred thousand (200,000) shares ("the Shares") of restricted common stock, in the name of Beryl Zyskind, with piggy-back registration rights, pursuant to Article "7" of this Note.

(B)    For a period of ninety (90) days after the Maturity Date, and subject to the prior full payment of this Note, the Payor shall have the right to repurchase the Shares for a price of $0.50 per Share. Payor shall notify Payee by written notice pursuant to Paragraph C of Article "15" of this

## PROMISSORY NOTE

$100,000

August 22, 2005

FOR VALUE RECEIVED, Trio Industries Group, Inc., a Texas corporation with an address at 6750 Hillcrest Plaza Drive, Dallas, TX (the "Payor"), agrees to pay to the order of Charter Capital Resources Inc., with an address at 150 East 58th Street, Suite 7A, New York, NY 10022 (the "Payee"), on the Maturity Date set forth in Article "1" of this Promissory Note (the "Note"), unless earlier accelerated in accordance with the terms of this Note, the principal sum of one hundred thousand ($100,000) dollars, with the financing fee set forth in Article "2" of this Note.

1. Maturity

   Payment of the principal balance of this Note shall be due and payable in full on September 22, 2005 (the "Maturity Date") unless earlier accelerated in accordance with the terms of this Note.

2. Financing Fees/Penalties

   (A)    The Payor agrees to pay to the Payee on the Maturity Date a financing fee of eight thousand ($8,000) dollars.

   (B)    After the Maturity Date, there will be a five (5) day grace period wherein the Payor shall have the opportunity to cure any default by paying a two thousand ($2,000) dollar penalty to the Payee, increasing the total repayment obligation to a sum of one hundred and ten thousand ($110,000) dollars.

   (C)    If full payment of the principal and financing fee due pursuant to this Note is made more than five (5) business days after the Maturity Date, then the Payor shall pay to the Payee the sum of one thousand ($1,000) dollars and issue to the Payee twenty-five hundred (25,000) shares of Payor's common stock for each day thereafter until full payment of principal, the financing fee, and all penalty amounts is made.

3. Issuance of Shares

   (A)    As consideration for making the loan which is the subject of this Note, the Payee shall receive from the Payor two hundred thousand (200,000) shares ("the Shares") of restricted common stock, in the name of Beryl Zyskind, with piggy-back registration rights, pursuant to Article "7" of this Note.

   (B)    For a period of ninety (90) days after the Maturity Date, and subject to the prior full payment of this Note, the Payor shall have the right to repurchase the Shares for a price of $0.50 per Share. Payor shall notify Payee by written notice pursuant to Paragraph C of Article "15" of this

Note of its intention to repurchase the Shares and a closing with respect to said purchase shall take place within ten (10) business days after the Payee's receipt of such notice.

4.    Security

To secure the prompt and complete payment, performance and observance of this Note, simultaneously with the execution of this Note, the Payor shall place in escrow with Mintz & Fraade, P.C. an aggregate of thirty million (30,000,000) shares of the Payor ( the "Security Shares") which are to be issued in the name of Beryl Zyskind. Upon their issuance by the Payor, the Security Shares shall immediately be delivered to Mintz & Fraade, P.C. to hold in escrow pursuant to the escrow agreement dated August 22, 2005, by and among Mintz & Fraade, P.C, the Payor and the Payee in the form annexed hereto and made a part hereof as Exhibit "A" (the "Escrow Agreement").

5.    Interest Rate Limitation

It is the intent of the Payee and the Payor in the execution of this Note that the loan evidenced hereby be exempt from the restrictions of applicable state usury laws. In the event that for any reason, it should be determined that any such usury law is applicable to this Note, the Payee and the Payor stipulate and agree that none of the terms and provisions contained herein shall ever be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by the laws of such state. In such event, if the Payee shall collect monies which are deemed to constitute interest which would otherwise increase the effective interest rate on this Note to a rate in excess of the maximum rate permitted to be charged by applicable state law, all such sums shall, at the option of Payee, be credited to the payment of the sums due hereunder or returned to the Payor.

6.    Restrictive Legend

The Shares have not been registered under the Securities Act of 1933, as amended (the "Act"), or under the securities laws of any state and shares may not be sold, pledged, transferred or assigned in the absence of an effective registration statement with respect thereto under the Act and compliance with any applicable state securities law, or unless the Payor receives an opinion from its counsel, that such registration is not required. The Common Stock shall bear the following restrictive legend:

"The Common Stock which is represented by this Certificate has not been registered under the Securities Act of 1933, as amended (the "Act"). These securities have been acquired for investment purposes only and not with a view to distribution or resale, and may not be sold, transferred, made subject to a security interest, pledged, hypothecated or otherwise disposed of unless and until registered under the Act, or on an opinion of counsel for the Payor, that registration is not required under such Act."

2

7.    <u>Registration Rights</u>

(A)    If the Payor shall at any time seek to register or qualify any of its common stock, on each such occasion, the Payor shall give the Payee at least thirty (30) days prior written notice thereof and the Payee shall have the option, without cost or expense, to include all of the common stock, as the case may be, which it holds at said time or which may be issued to in such registration or qualification. The Payee shall exercise the "piggy back rights" pursuant to this Paragraph "A" of this Article "7" of this Note by giving written notice to the Payor within twenty (20) days after receipt of the written notice from the Payor of its intention to have its common stock, as the case may be, registered. All expenses in connection with preparing and filing any registration statement pursuant to this Paragraph "A" of this Article "7" of this Note (and any registration or qualification under the securities or "Blue Sky" laws of states in which the offering will be made under such registration statement) shall be borne in full by the Payor.

(B)    The Payee agrees that if the Payor's common stock, will be registered through an underwritten registration, the Payee shall be subject to the same restrictions which are imposed by the underwriter on a uniform basis upon all officers, directors, managers and holders of 10% or more of the common stock of the Company.

8.    <u>Events of Default</u>

The term "Event of Default" as used herein shall mean the occurrence of any one or more of these following events:

(A)    The failure of the Payor to make payment of Principal and Financing Fee on or prior to the Maturity Date and the five (5) day grace period;

(B)    The filing by the Payor of a petition in bankruptcy;

(C)    The making of an assignment by the Payor for the benefit of its creditors;

(D)    Consent by the Payor to the appointment of, or possession by, a custodian for itself or for all or substantially all of its property;

(E)    The filing of a petition in bankruptcy against the Payor with the consent of the Payor;

(F)    The filing of a petition in bankruptcy against the Payor without the consent of the Payor, and the failure to have such petition dismissed within ninety (90) days from the date upon which such petition is filed;

(G)    Notwithstanding the ninety (90) day provision in Paragraph "(F)" of Article "8" of this Note, on a petition in bankruptcy filed against Payor, Payor is adjudicated bankrupt; and

(H)    The entry by a court of competent jurisdiction of a final non-appealable order, judgment or decree appointing, without the consent of the Payor, a receiver, trustee or custodian for

3

the Payor or for all or substantially all of the property or assets of the Payor.

9.    <u>Remedies Upon Default</u>
Upon the occurrence of an Event of Default and any time thereafter while such Event of Default is continuing, the entire principal which is due pursuant to this Note shall, at the Payee's option, be accelerated and become and be immediately due and payable without presentment, demand, protest or further notice of any kind, all of which are expressly waived by the Payor.

10.    <u>Non-Exclusive Remedy</u>
Any remedy that is set forth in this Note is not exclusive of any remedies that are provided by law.

11.    <u>Liability Upon Default</u>

The liability of the Payor upon default shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Payee including, but not limited to, any extension of time, renewal, waiver or other modification.

12.    <u>Exercise of Remedy Upon Default</u>
No failure on the part of the Payee to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

13.    <u>Collection Costs</u>
The Payor agrees to pay all reasonable costs of collection, including attorney's fees and costs, which may be paid or incurred by the Payee in connection with the Payee's exercise of its rights or remedies under this Note.

14.    <u>Full Recourse</u>
Anything in this Note to the contrary notwithstanding, the Payor hereunder shall be liable on this Note for the full amount of the principal and interest due pursuant to this Note.

15.    <u>Miscellaneous</u>

(A)    <u>Headings</u>.  Headings contained in this Note are for reference purposes only and shall not affect in any way the meaning or interpretation of this Note.

(B)    <u>Enforceability</u>.  If any provision which is contained in this Note should, for any reason, be held to be invalid or unenforceable in any respect under the laws of any jurisdiction, such invalidity or unenforceability shall not affect any other provision of this Note and this Note shall be construed as if such invalid or unenforceable provision had not been contained herein.

(C)    <u>Notices</u>.  Any notice or other communication required or permitted hereunder shall be sufficiently given if sent by (i) mail by (a) certified mail, postage prepaid, return receipt requested

4

and (b) first class mail, postage prepaid (ii) overnight delivery with confirmation of delivery or (iii) facsimile transmission with an original mailed by first class mail, postage prepaid, addressed as follows:

To the Payee:
Charter Capital Resources, Inc.
150 East 50th Street, Suite 7A
New York, NY 10022

To the Payor:
Trio Industries Group, Inc.
6750 Hillcrest Plaza Drive
Dallas, TX

With a copy to:
Mintz & Fraade, P.C.
488 Madison Avenue, Suite 1100
New York, NY 10022
Attn: Frederick M. Mintz, Esq.
Fax No.: (212) 486-0701

or in each case to such other address and facsimile number as shall have last been furnished by like notice. If all of the methods of notice set forth in this Paragraph "(C)" of Article "15" of this Note are impossible for any reason, notice shall be in writing and personally delivered to the aforesaid addresses. Each notice or communication shall be deemed to have been given as of the date so mailed or delivered as the case may be; provided, however, that any notice sent by facsimile shall be deemed to have been given as of the date so sent if a copy thereof is also mailed by first class mail on the date sent by facsimile. If the date of mailing is not the same as the date of sending by facsimile, then the date of mailing by first class mail shall be deemed to be the date upon which notice is given; provided further, however, that any notice sent by overnight delivery shall be deemed to have been given as of the date of delivery.

(D)     Governing Law; Disputes.  This Note shall in all respects be construed, governed, applied and enforced in accordance with the laws of the State of New York applicable to contracts made and to be performed therein, without giving effect to the principles of conflicts of law. The parties hereby consent to and irrevocably submit to personal jurisdiction over each of them by the Courts of the State of New York in any action or proceeding, irrevocably waive trial by jury and personal service of any and all process and specifically consent that in any such action or proceeding, any service of process may be effectuated upon any of them by certified mail, return receipt requested, in accordance with Paragraph "(C)" of Article "15" of this Note.

(E)     Assignment  This Note may not be assigned or transferred by the Payee unless the Payor receives an opinion from its counsel that an exemption from the registration requirements under the Act applies.

(F)     Construction.  Each of the parties hereto hereby further acknowledges and agrees that (i) each has been advised by counsel during the course of negotiations and (ii) each counsel has had significant input in the development of this Note and (iii) this Note shall not, therefore, be

5

construed more strictly against any party responsible for its drafting regardless of any presumption or rule requiring construction against the party whose attorney drafted this Note.

(G)    Entire Agreement.  This Note and all documents and instruments referred to herein (i) constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and thereof, and (ii) are not intended to confer upon any person other than the parties hereto any rights or remedies hereunder.

(H)    Further Assurances.  The parties agree to execute any and all such other further instruments and documents, and to take any and all such further actions which are reasonably required to effectuate this Note and the intents and purposes hereof.

(I)    Binding Agreement.  This Note shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns.

(J)    Non-Waiver.  Except as otherwise expressly provided herein, no waiver of any covenant, condition, or provision of this Note shall be deemed to have been made unless expressly in writing and signed by the party against whom such waiver is charged; and (i) the failure of any party to insist in any one or more cases upon the performance of any of the provisions, covenants or conditions of this Note or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future of any such provisions, covenants or conditions, (ii) the acceptance of performance of anything required by this Note to be performed with knowledge of the breach or failure of a covenant, condition or provision hereof shall not be deemed a waiver of such breach or failure, and (iii) no waiver by any party of one breach by another party shall be construed as a waiver of any other or subsequent breach.

(K)    Modifications.  This Note may not be changed, modified, extended, terminated or discharged orally, but only by an agreement in writing, which is signed by the Payor and the Payee of this Note.

(L)    Severability.  The provisions of this Note shall be deemed separable.  Therefore, if any part of this Note is rendered void, invalid or unenforceable, such rendering shall not affect the validity or enforceability of the remainder of this Note.

IN WITNESS WHEREOF, the Payor has executed this Note as of the 22nd day of August 2005.

Trio Industries Group, Inc..

By: _____

6

EXHIBIT B

# MINTZ & FRAADE, P.C.
## COUNSELORS AT LAW
### 488 MADISON AVENUE
### NEW YORK, NEW YORK 10022

TELEPHONE
(212) 486-2500

TELECOPIER
(212) 486-0701

OF COUNSEL
JAY D. FISCHER
EDWARD C. KRAMER
MELVIN L. LEBOW
MARTIN L. LERNER
MELVYN R. LEVENTHAL
KEVIN J. MCGRAW
ARTHUR L. PORTER, JR
JON M. PROBSTEIN
I. FREDERICK SHOTKIN

August 24, 2005

Charter Capital Resources Inc.
150 East 58th Street, Suite 7A
New York, NY 10022

Trio Industries Group, Inc.
6750 Hillcrest Plaza Drive
Dallas, TX

Re: Escrow Agreement

Gentlemen:

Mintz & Fraade, P.C., (hereinafter referred to as the "Escrow Agent") agrees to act as escrow agent pursuant to the terms of this Escrow Agreement.

1.     In connection with the execution simultaneously herewith of the Promissory Note dated August 24, 2005 (the "Note") from Trio Industries Group, Inc. ( the "Payor") in favor of Charter Capitol Resources Inc., (the "Payee") which is annexed hereto and made a part hereof as Exhibit "A", the Escrow Agent hereby acknowledges receipt of a stock certificate evidencing thirty million (30,000,000) shares of common stock of the Payor (" the Shares") which are issued in the name of Beryl Zyskind, (the "Escrow Item"). The Escrow Agent shall hold the Escrow Item in escrow pursuant to this Escrow Agreement; in accordance with the following terms and conditions:

A. Upon receiving written notice, which is in such form which is satisfactory to the Escrow Agent, from the Payee with respect to the failure of the Payor to pay the sum of one hundred and eight thousand ($108,000) dollars to the Payee on or prior to the Maturity Date of the Note, the Escrow Agent shall deliver the Escrow Item as directed in writing by the Payee; provided, however, that the Escrow Agent shall not release the Escrow Item if the Escrow Agent receives written notice from the Payor objecting to such delivery being made within ten (10) days after receipt of written notice from the Payee.

B. Upon receiving written notice, which is in such form which is satisfactory to the Escrow Agent, from the Payor that the Payor has paid and satisfied its obligations pursuant to the Note, the Escrow Item shall be returned to Payor; provided, however, that the Escrow

Agent shall not release the Escrow Item if the Escrow Agent receives written notice from the Payee objecting to such delivery being made within ten (10) days after receipt of written notice from the Payor.

     C.  The Escrow Agent shall deliver the Escrow Items to the party or parties specified in a written notice received from both of the parties, which is in such form which is satisfactory to the Escrow Agent, instructing the Escrow Agent to deliver the Escrow Item to a specified party or parties.

     D.  The Escrow Agent's obligation to act as Escrow Agent pursuant to this Escrow Agreement shall terminate at such time as (a) the Escrow Agent shall deliver the Escrow Items pursuant to Paragraphs "A", "B" or "C" of this Article "1" of this Escrow Agreement, (b) the Escrow Agent receives written notice from the Payee, which notice is in such form which is satisfactory to the Escrow Agent, that the Payee received the sum of one hundred and eight thousand ($108,000) dollars on or prior to the Maturity Date of the Note or (c) the Escrow Agent shall have deposited the Escrow Item in court pursuant to Article "7" of this Escrow Agreement or the last sentence of Article "9" of this Escrow Agreement.

    2.   A.  The Escrow Agent is hereby released and exculpated from all liability, costs, and expenses whatsoever which arise out of or in connection with the Escrow Agent's activities as escrow agent hereunder.  The Escrow Agent shall not be liable for negligence or gross negligence.  The Escrow Agent shall be liable only to the extent of any loss or damage which is caused by its willful misconduct.

     B.  The Escrow Agent shall not be obligated to verify (i) the authenticity of any documents submitted to it as originals, (ii) the genuineness of the signatures on any documents submitted to it; (iii) the legal capacity of any persons who executed any document submitted to it; (iv) the due authorization and valid execution of any agreement submitted to it by all parties thereto; (v) that any agreement submitted to it constitutes a valid and legally binding agreement and obligation of the parties; and (vi) the conformity to the originals of any documents submitted to it (a) as photostatic copies or (b) via facsimile.

    3.  The Escrow Agent may act or refrain from acting with respect to any matter which is referred to herein in reliance upon either: (A) the advice of any counsel who may be selected by the Escrow Agent from time to time, including, but not limited to, the Escrow Agent if it is acting as its own counsel or (B) a good faith determination by the Escrow Agent.  The Escrow Agent is hereby released and exculpated from all liability or claimed liability by the parties or any other person which may arise or be alleged to have arisen, out of or as a result of, in connection with acting as Escrow Agent or in refraining from acting upon either: (A) the advice of any counsel, including, but not limited to, the Escrow Agent if it is acting as its own counsel; or (B) a good faith determination by the Escrow Agent.

    4.  The Escrow Agent may rely and is hereby released and exculpated from all liability, including, but not limited to losses, costs, and expenses whatsoever which arises out of or in connection with its actions based upon any paper or other document which may be submitted to the Escrow Agent in connection with its duties hereunder which is believed by the Escrow Agent

to be genuine and to have been signed by the proper party or parties and the Escrow Agent shall have no liability or responsibility with respect to the form, execution or validity thereof.

5.  The Escrow Agent may institute or defend any action or legal process which involves any matter which is referred to herein which in any manner affects the Escrow Agent or its duties or liabilities hereunder, but the Escrow Agent shall not be required to institute or defend such action or process unless or until requested to do so, and then only upon receiving full indemnity, against any and all claims, liabilities, judgments, reasonable attorneys' fees including the fair value for legal fees rendered by it if the Escrow Agent acts as its own counsel and other expenses of every kind in relation thereto.  Such indemnification shall be in form and amount satisfactory to the Escrow Agent, in its sole and absolute discretion, and from such parties determined by the Escrow Agent in its sole and absolute discretion.

6.  The parties agree to and shall indemnify and save the Escrow Agent harmless from and against any losses, claims, liabilities, judgments, reasonable attorneys' fees and other expenses of every kind and nature which may be suffered, sustained or incurred by the Escrow Agent by reason of its acceptance of, and its performance under, this Escrow Agreement except for the Escrow Agent's willful misconduct.  In addition, the Escrow Agent shall be entitled to the fair value of the legal services incurred to outside counsel, or all legal fees and expenses incurred by it if it determines, in its sole and absolute discretion, to act as its own counsel, with respect to the Escrow Agent's acceptance of, and its performance pursuant to this Escrow Agreement.

7.  The Escrow Agent may at any time, in its sole and absolute discretion, deposit the Escrow Items with a court of competent jurisdiction in New York County, New York State pursuant to an action of interpleader, and upon such deposit the Escrow Agent shall be released from any further liability or obligation as the Escrow Agent.

8.  In the event of any dispute which is referred to herein, the Escrow Agent shall be entitled to consult with counsel, including itself, and commence or defend any legal proceeding if the Escrow Agent, in its good faith determination, determines to do so, and shall be reimbursed by the Payor for all legal fees and expenses in connection with such consultation and legal proceeding and shall be further entitled to the fair value of the legal fees incurred by it if the Escrow Agent decides to act as its own counsel, and expenses in connection with such consultation and legal proceeding and shall be further entitled to receive from the Payor all reasonable expenses which are incurred by the Escrow Agent in connection with its acting as the Escrow Agent.

9.  The Escrow Agent may resign at any time from its duties as Escrow Agent by giving the parties at least seven (7) business days prior written notice ("Resignation Notice") pursuant to Paragraph "C" of Article "12" of this Agreement.  The Escrow Agent shall upon the (A) acceptance of the new escrow agent by the Payor and the Payee and (ii) presentation of an executed agreement appointing said new escrow agent turn over to said escrow agent the Escrow Items.  If no such escrow agent is appointed within twenty (20) days after the giving of Resignation Notice, the Escrow Agent may deposit the Escrow Items with a court of competent jurisdiction in New York County, New York State.

3

10. Nothing which is contained herein or in any instruments executed simultaneously herewith, shall prevent the Escrow Agent from representing as counsel anyone including, but not limited to, the Payee in any matter whatsoever, including but not limited to any action or proceeding which relates to this Escrow Agreement, or any instruments which are executed simultaneously herewith.

11. The persons executing this Escrow Agreement hereby represent that each is duly authorized to enter into this Escrow Agreement in the capacity specified, and upon request, will provide documentation to the Escrow Agent and the other party which supports his or her authority to enter into this Escrow Agreement.

12. <u>Miscellaneous</u>.

    A. <u>Headings</u>. Headings contained in this Note are for reference purposes only and shall not affect in any way the meaning or interpretation of this Note.

    B. <u>Enforceability</u>. If any provision which is contained in this Escrow Agreement should, for any reason, be held to be invalid or unenforceable in any respect under the laws of any jurisdiction, such invalidity or unenforceability shall not affect any other provision of this Escrow Agreement and this Escrow Agreement shall be construed as if such invalid or unenforceable provision had not been contained herein.

    C. <u>Notices</u>. Any notice or other communication required or permitted hereunder shall be sufficiently given if sent by (i) mail by (a) certified mail, postage prepaid, return receipt requested and (b) first class mail, postage prepaid or (ii) overnight delivery with confirmation of delivery, addressed as follows:

If to Payee:
    Charter Capital Resources Inc.
    150 East 58th Street, Suite 7A
    New York, NY 10022

    with a copy to:
    Mintz & Fraade, P.C.
    488 Madison Avenue, Suite 1100
    New York, NY 10022
    Attn: Alan P. Fraade

If to the Escrow Agent:
    Mintz & Fraade, P.C.
    488 Madison Avenue, Suite 1100
    New York, NY 10022
    Attn: Alan P. Fraade

If to the Payor:
    Trio Industries Group, Inc.
    6750 Hillcrest Plaza Drive
    Dallas, TX

with a copy to:    _____    – ––
                   _____
                   _____

or in each case to such other address and facsimile number as shall have last been furnished by like notice. If all of the methods of notice set forth in this Paragraph "C" of this Article "14" of this Escrow Agreement are impossible for any reason, notice shall be in writing and personally delivered to the aforesaid addresses. Each notice or communication shall be deemed to have been given as of the date so mailed or delivered as the case may be. Any notice sent by overnight delivery shall be deemed to have been given as of the date of delivery.

D. Governing Law; Disputes. This Agreement shall in accordance with Section 5-1401 of the General Obligations Law of New York in all respects be construed, governed, applied and enforced under the internal laws of the State of New York without giving effect to the principles of conflicts of laws and be deemed to be an agreement entered into in the State of New York and made pursuant to the laws of the State of New York. The parties hereby consent to and irrevocably submit to personal jurisdiction over each of them solely by the courts of the State of New York in any action or proceeding, irrevocably waive trial by jury and personal service of any and all process and specifically consent that in any such action or proceeding, brought in the State of New York, any service of process may be effectuated upon any of them by certified mail, return receipt requested, in accordance with Paragraph "C" of this Article "14" of this Escrow Agreement.

E. Construction. Each of the parties hereto hereby further acknowledges and agrees that (i) each has been advised by counsel during the course of negotiations and (ii) each counsel has had significant input in the development of this Escrow Agreement and (iii) this Escrow Agreement shall not, therefore, be construed more strictly against any party responsible for its drafting regardless of any presumption or rule requiring construction against the party whose attorney drafted this Escrow Agreement.

F. Entire Agreement. This Escrow Agreement and all documents and instruments referred to herein (i) constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and thereof, and (ii) are not intended to confer upon any person other than the parties hereto any rights or remedies hereunder.

G. Further Assurances. The parties agree to execute any and all such other further instruments and documents, and to take any and all such further actions which are reasonably required to effectuate this Escrow Agreement and the intents and purposes hereof.

H. Binding Agreement. This Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns.

I. Non-Waiver. Except as otherwise expressly provided herein, no waiver of

5

any covenant, condition, or provision of this Escrow Agreement shall be deemed to have been made unless expressly in writing and signed by the party against whom such waiver is charged; and (i) the failure of any party to insist in any one or more cases upon the performance of any of the provisions, covenants or conditions of this Escrow Agreement or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future of any such provisions, covenants or conditions, (ii) the acceptance of performance of anything required by this Escrow Agreement to be performed with knowledge of the breach or failure of a covenant, condition or provision hereof shall not be deemed a waiver of such breach or failure, and (iii) no waiver by any party of one breach by another party shall be construed as a waiver of any other or subsequent breach.

     J.  <u>Modifications</u>.  This Escrow Agreement may not be changed, modified, extended, terminated or discharged orally, but only by an agreement in writing, signed by all of the parties to this Escrow Agreement.

     K.  <u>Exhibits</u>.  All Exhibits annexed or attached to this Escrow Agreement are incorporated into this Escrow Agreement by reference thereto and constitute an integral part of this Escrow Agreement.

     L.  <u>Severability</u>.  The provisions of this Escrow Agreement shall be deemed separable.  Therefore, if any part of this Escrow Agreement is rendered void, invalid or unenforceable, such rendering shall not affect the validity or enforceability of the remainder of this Escrow Agreement; provided, however, that if the part or parts which are void, invalid or unenforceable as aforesaid shall substantially impair the value of this whole Escrow Agreement to any party, that party may cancel, and terminate the Escrow Agreement by giving written notice to the other party.

     Please sign the attached counterpart of this Escrow Agreement where indicated below to acknowledge your agreement with the foregoing.

                  Very truly yours,

                  Mintz & Fraade, P.C.

                  By:_____

Charter Capital Resources, Inc.

By:_____
    Beryl Zyskind

Trio Industries Group, Inc.

By:_____

6

# EXHIBIT B

JUN.26.2007  3:37PM  DLS, INC.                              NO.202   P.2

  **Demovsky Lawyer Service**
Premier Nationwide Document Retrieval
and Process Service Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CHARTER CAPITAL RESOURCES, INC.,

        Plaintiff,                              Case No. 07 CV 3354
                                               (Judge Scheindlin)

        -against-                             AFFIDAVIT OF SERVICE

TRIO INDUSTRIES GROUP, INC.,

        Defendant.
------------------------------------------------------------X

STATE OF FLORIDA     )
       S.S.:
COUNTY OF BROWARD   )

        RONALD HARPER, being duly sworn, deposes and says that he is over the age of eighteen years, is an agent of the attorney service, D.L.S., Inc., and is not a party to this action.

        That on the 18 day of June, 2007, at approximately the time of 11 45 AM deponent served a true copy of the SUMMONS IN A CIVIL CASE; COMPLAINT; CIVIL COVER SHEET; 3RD AMENDED INSTRUCTIONS FOR FILING AN ELECTRONIC CASE OR APPEAL; INDIVIDUAL RULES AND PROCEDURES OF JUDGE SHIRA A. SCHEINDLIN; AND INDIVIDUAL PRACTICES OF MAGISTRATE JUDGE THEODORE H. KATZ upon TRIO INDUSTRIES GROUP, INC. c/o Legal Information Services, Inc. at 2500 Weston Road, Suite 404, Weston, FL, by personally delivering and leaving the same with RON OPPENHEIM who informed deponent that he is authorized by appointment on behalf of Legal Information Services, Inc. to receive service at that address.

        RON OPPENHEIM is a white male, in his 30's, stands approximately 5 feet 8 inches tall, weighs approximately 160 pounds with brown hair.

RONALD HARPER

Sworn to before me this
_77_ day of June, 2007

NOTARY PUBLIC


LISA M. BENNETT
Comm# DD0277607
Expires 12/28/2007
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

D.L.S., Inc.
401 Broadway
Ste 510
NY, NY 10013
212-925-1220
www.dlsny.com